IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **BRIAN LOMANACK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:15-cv-122-MHT-PWG** |
| | ) | |
| **CITY OF OZARK, ALABAMA,** | ) | |
| *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATION

Plaintiff was in an all-terrain vehicle ("ATV") accident, and he brings this lawsuit seeking redress for injuries he alleges were caused by a delay in emergency medical care caused by Defendants. This matter is before the court on the following motions: (1) a motion to dismiss for failure to state a claim upon which relief can be granted filed by Defendant City of Ozark, Alabama ("the City") (Doc. 11); and (2) a motion for partial dismissal filed by Defendant Ozark-Dale County E-911 Board, Inc. ("the Board") (Doc. 16). The motions are fully briefed and are taken under submission on the record and without oral argument.

## I.    JURISDICTION

Subject matter jurisdiction is conferred by 28 U.S.C. § 1331 as to Plaintiff's federal causes of action, and the court may exercise supplemental jurisdiction over

Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. The parties do not contest personal jurisdiction or venue, and there are adequate allegations to support both. *See* 28 U.S.C. § 1391. On September 24, 2015, this matter was referred to the undersigned by U.S. District Judge Myron H. Thompson for disposition or recommendation on all pretrial matters. (Doc. 38). *See also* 28 U.S.C. § 636(b); Rule 72, Fed. R. Civ. P.; *United States v. Raddatz,* 447 U.S. 667 (1980); *Jeffrey S. v. State Board of Education of State of Georgia,* 896 F.2d 507 (11th Cir. 1990).

## II.   BACKGROUND AND STATEMENT OF FACTS[1]

While operating an ATV near the intersection of County Road 59 and County Road 61 in Dale County, Alabama, Plaintiff had an accident in which he sustained serious injury and was rendered unconscious, unresponsive, bleeding, barely breathing, and in critical condition. (Doc. 1 at ¶¶ 9-10, 18). The accident occurred near Echo, Alabama, within the jurisdiction of Echo Volunteer Fire & Rescue ("Echo EMS"), and not within the jurisdiction of the Ozark City Fire Department. (Doc. 1 at ¶ 10). The Board serves as the central emergency dispatch unit for multiple first-responder agencies in Dale County, including the Ozark City Fire Department and

---

[1] These are the facts for purposes of recommending a ruling on the pending motions to dismiss; they may not be the actual facts and are not based upon evidence in the court's record. They are gleaned exclusively from the allegations in the Complaint. The court did not consider certain additional facts mentioned in the City's Memorandum Brief (Doc. 17) regarding whether the Board is a governmental entity. *See* Federal Rule Civil Procedure 12. Therefore, the motion to dismiss at issue is not converted to a Rule 56 motion for summary judgment.

Echo EMS. (Doc. 1 at ¶ 5). The Board uses a central emergency response system that consists of several channels, including a separate channel for each agency that allows a dispatcher to communicate exclusively with each individual agency, and a "general" channel through which a dispatcher may communicate with all agencies simultaneously. (Doc. 1 at ¶ 12).

On April 3, 2013, Cauthen was working as a dispatcher for the Board and received an initial report requesting emergency medical care for Plaintiff, which she relayed to Echo EMS. (Doc. 1 at ¶¶ 15-17). Echo EMS responded to the scene of the injury and reported to Cauthen that Plaintiff was "critical" and "barely breathing." (Doc. 1 at ¶ 18). Based on that report, Rocky Windham, the Chief of Echo EMS, ordered Cauthen to dispatch Flat Iron air evacuation services ("Flat Iron"). (Doc. 1 at ¶¶ 20-22). Cauthen issued the dispatch order to Flat Iron and announced the order over the general channel. (Doc. 1 at ¶ 23).

Defendant Gregory Boutwell, Fire Chief for the City, was intoxicated during the events relevant to this action, and at no point was Boutwell at the scene of the accident. (Doc. 1 at ¶¶ 24-25). Boutwell heard Cauthen's order for dispatch of Flat Iron on the general channel. (Doc. 1 at ¶ 25). Boutwell utilized the Ozark Fire Department's separate channel to instruct Cauthen to cancel the dispatch for Flat Iron and to place everyone on "standby" until he could arrive at the scene of the accident.

3

(Doc. 1 at ¶ 26). Cauthen informed Boutwell that the accident was in Echo and cancelled the dispatch to Flat Iron. (Doc. 1 at ¶ 26). Echo EMS was not apprised of this communication. (Doc. 1 at ¶ 27).

Windham arrived at the scene and requested information on Flat Iron's status from Cauthen, which Cauthen ignored. (Doc. 1 at ¶ 29). Cauthen reported Plaintiff's condition again to Boutwell on the Ozark Fire Department's separate channel, and Boutwell again reaffirmed his order not to dispatch Flat Iron until he arrived at the scene. (Doc. 1 at ¶ 31). After multiple requests from Echo EMS responders for a status update, Cauthen reported that she had cancelled the Flat Iron dispatch and reported over the general channel that Boutwell had advised her to place all units on standby until he reached the scene of the accident. (Doc. 1 at ¶¶ 33-34). Windham reported to Cauthen that he was at the scene, that Plaintiff was critical, and to dispatch Flat Iron. (Doc. 1 at ¶ 35). By the time Flat Iron was prepared to lift off, an ambulance had arrived on the scene of the accident. (Doc. 1 at ¶ 37). First responders at the scene made the decision to transport Plaintiff to the Flowers Hospital via ambulance to avoid further delay. (Doc. 1 at ¶ 37). Upon arrival at Flowers Hospital, Plaintiff was diagnosed with a subarachnoid hemorrhage and subdural hematoma. He underwent procedures including an emergency craniotomy.(Doc. 1 at ¶ 38). As a result of the unnecessary delay in transport, Plaintiff alleges that he "sustained

substantial, permanent cognitive, physical, and economic injuries." (Doc. 1 at ¶39).

On February 23, 2015, Plaintiff filed a complaint in this court alleging six counts against the Defendants:

I. Violations of Fourteenth Amendment rights - Based on Boutwell's actions in his individual and official capacities.  (Doc. 1 at ¶¶ 40-45)

II. Violations of Fourteenth Amendment rights - Based on Cauthen's actions in her individual and official capacities. (Doc. 1 at ¶¶ 46-51)

III. Negligence/Wantonness against Boutwell in his individual and official capacities under Alabama tort law. (Doc. 1 at ¶¶ 52-55)

IV. Negligence/Wantonness against Cauthen in her individual and official capacities under Alabama tort law. (Doc. 1 at ¶¶ 56-59)

V. Negligence/Wantonness against City under Alabama tort law under the doctrine of *respondeat superior* and negligent supervision, training, and evaluation. (Doc. 1 at ¶¶ 60-64)

VI. Negligence/Wantonness against Ozark-Dale County E-911 Board, Inc., under Alabama tort law under the doctrine of *respondeat superior* and negligent supervision, training, and evaluation. (Doc. 1 at ¶¶ 65-69)

## II.    STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the Complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must take "the factual allegations in the complaint as true and construe them in the light

most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663 (alteration in original) (citation omitted). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  The standard also "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" of the claim.  *Twombly*, 550 U.S. at 556.  While the complaint need not set out "detailed factual allegations," it must provide sufficient factual amplification "to raise a right to relief above the speculative level." *Id.* at 555.

"So, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Twombly*, 550 U.S. 558 (quoting 5 Wight & Miller § 1216, at 233-34 (quoting in turn *Daves v. Hawaiian Dredging Co.*, 114 F.Supp. 643, 645 (D. Haw. 1953)) (alteration original). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).

> "In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

*Iqbal*, 556 U.S. at 679.

## III.   DISCUSSION - THE CITY'S MOTION TO DISMISS

### A.   Fictitious Defendants

Plaintiff names various fictitious defendants in his complaint. With a limited exception that does not apply in this case, "[a]s a general matter, fictitious-party pleading is not permitted in federal court."[2] *Richardson v. Johnson*, 598 F.3d 734,

---

[2] The Eleventh Circuit "created a limited exception to this rule when the plaintiff's description of the defendant is so specific as to be 'at the very worst, surplusage.'" *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (quoting *Dean v. Barber*, 951 F.2d 1210, 1215–16 (11th Cir. 1992)). This case does not fall within that exception. *See Richardson*, 598 F.3d at 738.

738 (11th Cir. 2010) (citing *New v. Sports & Recreation, Inc.*, 114 F.3d 1092, 1094 n.1 (11th Cir. 1997)).  A district court should dismiss claims against fictitious parties with prejudice; as such, the motions to dismiss are due to be granted on the merits in Defendants' favor on Plaintiff's claims against unnamed, fictitious parties.  *See id.* (citation omitted).

### B.    Punitive Damages

The City moves to dismiss all claims for punitive damages against it on the basis that municipalities are immune from such damages under § 1983. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) ("[W]e hold that a municipality is immune from punitive damages under 42 U.S.C. § 1983."). The Plaintiff concedes that it brought only one claim against the City, i.e. Count V, and agrees that pursuant to § 6-11-26, Ala. Code 1975, the City is immune to punitive damages and further concedes that the City is immune to the Plaintiff's wantonness claims. (Doc. 33 at 7) *See* § 11-47-190 ("No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the neglect, carelessness, or unskillfulness of some agent, officer, or employee of the municipality engaged in work therefor and while acting in the line of his or her duty..."). Therefore, the City's motion to dismiss the Plaintiff's claims for punitive damages and the claim of wantonness are due to be

8

granted on the merits in the City's favor.

### C.      Official-Capacity Claims Against Boutwell

The City further moves to dismiss all claims against Boutwell in his official capacity on the basis that "they are redundant to the claims against the City." (Doc. 12 at 7). The Plaintiff concedes that the claims against Boutwell in his official capacity in Counts I and III are due to be dismissed. (Doc. 33 at 7-8) *See Barnes v. City of Dothan*, 795 F.Supp. 2d 1276, 1283 (M.D. Ala. 2001)("Because the claims against the individual defendants in their official capacities are redundant and because the City has been joined as a defendant in this action, the Defendants' request is due to be GRANTED on this ground."). Therefore, the City's motion to dismiss the Plaintiff's claims against Boutwell in his official capacity are due to be granted in the Boutwell's favor.

### D.      Counts I-IV and VI Against the City

The City moves to dismiss Plaintiff's Counts I-IV and VI to the extent that they can be construed as seeking judgment against the City, noting that the Plaintiff's *ad damnun* clauses following each of those counts request "judgment against all Defendants jointly and severally." Plaintiff concedes that his "only claim against the City is made and *specifically noted* in Count V." (Doc. 33 at 8)(emphasis in original). Therefore, Plaintiff argues that the City's motion to dismiss Counts I-IV and VI

9

against the City should be denied as moot.  However, Plaintiff's *ad damnum* clauses arguably implicate the City in the context of "all Defendants." Therefore, because Plaintiff concedes that it is not seeking judgement against the City except in Count V, to the extent that Plaintiff otherwise implied claims against the City in Counts I-IV and VI, the City's motion to dismiss those claims as to the City is due to be granted in favor of the City.

### E.    Negligence Claims Against the City

The City advances a series of arguments in support of its motion to dismiss Plaintiff's state law negligence claims against it.  Each argument is addressed in turn below.

#### 1.    Plausibility of Causation

The City argues, pursuant to *Iqbal* and *Twombly*, *supra*, that Plaintiff failed to "plead factual content that plausibly demonstrates the essential elements of causation" for his negligence claim in Count V.  (Doc. 12 at 12).  Specifically, the City argues that "the Complaint does not plead factual allegations that plausibly demonstrate how the delay caused [the Plaintiff's] injuries ... or how those injuries could have been avoided, given the severity of Plaintiff's condition 'immediately' after the collision." (Doc. 12 at 13).

The city does not dispute that the Plaintiff's emergency transport was

substantially delayed, that Plaintiff was in critical condition with serious head trauma during that delay, or that the Plaintiff is mentally and physically impaired as a result of his injuries.  Rather than the delay in emergency transport, the City argues that "[c]ommon sense dictates that these conditions resulted from the collisions itself," which the City describes as "a more likely explanation for Plaintiff's injuries."  In this case, viewing "the factual allegations in the complaint as true and constru[ing] them in the light most favorable to the plaintiff," *Pielage*, 516 F.3d at 1284,  as is required when evaluating a motion to dismiss under Rule 12(b)(6), Plaintiff's allegations are sufficient to support an inference that he suffered severe head trauma, that his emergency transport was improperly delayed, and that "[a]s a direct result of the substantial, unnecessary delay in Plaintiff's emergency transport, Plaintiff has sustained substantial, permanent cognitive, physical, and economic injuries..." (Doc. 1 at ¶ 39).  That Plaintiff plausibly could have sustained injuries above and beyond his initial trauma as a result of unnecessary delay is "more than merely possible." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012).  "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal* at 663 (alteration in original) (citation omitted).  In this case, Plaintiff has pleaded sufficient factual allegations to plausibly demonstrate causation as a result

of the delay of medical transportation.

###     2.     *Respondeat Superior* - **Scope of Employment**

The City moves to dismiss Plaintiff's claim of negligence based on the doctrine of *respondeat superior* "because the Complaint's factual allegations do not plausibly demonstrate that Boutwell's alleged conduct fell within the scope of his employment." (Doc. 12 at 15).  Plaintiff's complaint alleged that Boutwell was employed as the Fire Chief for the City at the time of the accident. (Doc. 1 at ¶ 2). Plaintiff alleged that Boutwell heard the report of Plaintiff's injuries and the request to dispatch emergency air transport for Plaintiff on the general E-911 communication channel. (Doc. 12 at ¶ 25). Boutwell instructed Cauthen to cancel the order for air transport, place everyone on "standby" until he arrived at the scene, and inquired as to the location of the accident; Cauthen advised Boutwell that the accident occurred in Echo, which is outside the jurisdiction of the Ozark Fire Department, but affirmed that she would comply with Boutwell's instructions. (Doc. 12 at ¶ 26). This communication between Boutwell and Cauthen occurred on a separate, dedicated E-911 communication channel for the Ozark Fire Department.  (Doc. 12 at ¶ 27). Cauthen and Boutwell continued to communicate regarding the accident on the dedicated Ozark Fire Department channel and via telephone.  (Doc. 12 at ¶¶ 28, 31-32, 35).  The City argues that these allegations merely demonstrate "that Boutwell was employed by the

City and utilized City equipment." (Doc. 34 at p.13).

By statute, Alabama law allows for certain exceptions to municipal immunity:

"No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the neglect, carelessness, or unskillfulness of some agent, officer, or employee of the municipality engaged in work therefor and while acting in the line of his or her duty, or unless the said injury or wrong was done or suffered through the neglect or carelessness or failure to remedy some defect in the streets, alleys, public ways, or buildings..."

§ 11-47-190, Ala. Code 1975. Moreover, the Alabama Supreme Court has held:

"A corporation or employer will be liable for the torts of its employee committed while acting in the line and scope of his employment even though the corporation or employer did not authorize or ratify such acts and even if it expressly forbade them. *Old Southern Life Ins. Co. v. McConnell*, 52 Ala. App. 589, 296 So. 2d 183 (Ala. Civ. App. 1974). If there is any evidence in the record tending to show directly, or by reasonable inference, that the tortious conduct of the employee was committed while performing duties assigned to him, then it becomes a question for the jury to determine whether he was acting from personal motives having no relationship to the business of the employer. *Plaisance v. Yelder*, 408 So. 2d 136 (Ala. Civ. App.1981); *United States Steel Co. v. Butler*, 260 Ala. 190, 69 So. 2d 685 (1953)."

*Lawler Mobile Homes, Inc. v. Tarver*, 492 So. 2d 297, 305 (Ala. 1986). In this case, Plaintiff's allegations are sufficient to support a reasonable inference that Boutwell's conduct was committed while performing duties that were in the line and scope of his employment as the City's Fire Chief, i.e., the monitoring of E-911 communication and emergency response management in coordination with other emergency personnel

13

from other agencies such as Cauthen in her official capacity with the Board.  Whether Boutwell's alleged actions exceeded the actual authority or jurisdiction of his employment does not negate the inference that he was acting within the line and scope of his employment. Though Plaintiff's allegations are not exhaustive, Plaintiff's Complaint contains enough facts to plausibly allege a claim that Boutwell was acting within the line and scope of his employment.

### 3.   *Respondeat Superior* - Municipal Immunity

The City moves to dismiss Plaintiff's negligence claim based on *respondeat superior*, claiming that the City is entitled to municipal immunity under § 11-47-190, specifically because the "Complaint does not plead factual allegations which plausibly demonstrate the Boutwell was engaged in work for the City and acting in the line of his duty." (Doc. 12 at p.19).   However, as discussed above, Plaintiff's factual allegations give rise to a reasonable inference that Boutwell was acting within the line and scope of his employment as Fire Chief for the City.  Therefore, this argument does not entitle the City to dismissal of the negligence claim on this theory.

### 4. Negligent Supervision, Training, and Evaluation - Line and Scope of Employment

The City moves to dismiss Plaintiff's claim that "the City negligently supervised, trained, and evaluated Boutwell. (Doc. 1 at 18-19, ¶¶ 62-63.)  Because Boutwell did not act within the scope of his employment, these claims are not viable."

14

(Doc. 12 at p.20).  However, as discussed above, Plaintiff's factual allegations give rise to a reasonable inference that Boutwell was acting within the line and scope of his employment as Fire Chief for the City.  Therefore, this argument does not entitle the City to dismissal of Plaintiff's claim that the City negligently supervised, trained, and evaluated Boutwell.

### 5.  Negligent Supervision, Training, and Evaluation - Plausibility

The City moves to dismiss Plaintiff's claim that the City negligently supervised, trained, and evaluated Boutwell on the basis that the Complaint does not plausibly demonstrate that the City breached any duties to supervise, train, or evaluate Boutwell. Plaintiff's claim for negligent supervision, training, and evaluation is as follows, in its entirety:

> "62.  Furthermore, Defendant City of Ozark, Alabama, had a duty to supervise and train Defendant Boutwell and to ensure that Defendant Boutwell performed his employment duties in accordance with all applicable laws, standards, regulations, and rules of any type, and Defendant City of Ozark, Alabama, negligently and/or wantonly failed to discharge said duty.

> 63.  Defendant City of Ozark, Alabama, had a duty to evaluate and determine the physical, medical, and psychological qualifications and conditions of its employees, including Defendant Boutwell, and Defendant City of Ozark, Alabama, negligently and/or wantonly failed to discharge said duty."

(Doc. 1 at ¶¶ 62-63).  The City argues that these claims lack factual support to meet the standard announced in *Iqbal* and *Twombly*. (Doc. 12 at 21). Plaintiff argues that

15

"one could reasonably infer that the City did not train or screen Boutwell with regard to consuming alcohol while on the job or with regard to diagnosis or signs that Boutwell was an alcoholic." (Doc. 33 at pp.23-24). However, the only factual allegation in the Complaint to support such an inference is Plaintiff's allegation that "[a]t all times relevant hereto, Defendant Gregory Boutwell was under the influence of alcohol and/or other intoxicating substances/medications." (Doc. 1 at ¶ 24). Even construing this factual allegation in the light most favorable to Plaintiff, the bare allegation that Boutwell was under the influence of alcohol on a single occasion does not reasonably give rise to a plausible inference that the City failed to supervise, train, or evaluate Boutwell. Plaintiff makes no factual allegations regarding the City's supervision, training, or evaluation of Boutwell.  As such, the City's claims of negligent supervision, training, and evaluation are  "no more than conclusions, [and] are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Therefore, the City's motion to dismiss the Plaintiff's claims against the City for negligent supervision, training, and evaluation are due to be granted in the City's favor.[3]

---

[3]The City raised two other arguments based on immunity and *respondeat superior* in support of its motion to dismiss Plaintiff's claims of negligent supervision, training, and evaluation. Because the motion is due to be granted for failure to support the claims with factual allegations, discussion of the City's remaining arguments is pretermitted.

## IV.   DISCUSSION - THE BOARD'S MOTION FOR PARTIAL DISMISSAL

### A.   COUNTS I-V

The Board moves to dismiss Plaintiff's Counts I-V VI to the extent that they can be construed as seeking judgment against the Board.  Despite the fact that the Plaintiff's *ad damnun* clauses following each of those counts sought "judgment against all Defendants jointly and severally," (Doc. 1 at ¶¶ 45, 51, 55, 59, and 64), Plaintiff concedes that it brought no claims against the Board in Counts I-V. Nevertheless, Plaintiff argues that the Board's motion to dismiss those counts should be denied as moot.  However, because Plaintiff concedes that it intended no claim against the Board in Counts I-V despite seeking "judgment against all Defendants," to the extent that Plaintiff otherwise implied claims against the Board in Counts I-V, the Board's motion to dismiss those claims as to the Board is due to be granted in favor of the Board.

### B.   DAMAGES

The Board also seeks dismissal of Plaintiff's claims to the extent that he seeks damages in excess of $100,000.00 or based on punitive damages on the grounds that Alabama law does not provide for the award of punitive damages or damages in excess of $100,000 against governmental entities. Specifically, the Board argues that it is a "governmental entity" created pursuant to § 11-98-2, Ala. Code 1975, and

therefore it is not subject to recovery of damages by the Plaintiff in excess of $100,000.00 pursuant to § 11-93-2 or to punitive damages. (Doc. 17 at p.6). *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 267 (1981) ("A municipality, however, can have no malice independent of the malice of its officials. Damages awarded for punitive purposes, therefore, are not sensibly assessed against the governmental entity itself."). Plaintiff argues that whether the Board is a governmental entity entitled to limitations on damages is an issue that interjects facts not pleaded in the Complaint. The Complaint alleges that "Defendant, Ozark-Dale County E-911 Board, Inc., is a domestic corporation created and existing pursuant to Alabama law." The Board's Memorandum Brief in support of its motion for partial dismissal alleges facts that are not alleged in the Complaint, specifically, that the Board is a governmental "entity created pursuant to Alabama Code 11-98-2 ... by Dale County and the City of Ozark." (Doc. 17 at p.6). The Board did not attach any materials in support of its statement that it was created pursuant to § 11-98-2. Rule 12(d), Fed. R. Civ. P., provides that "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." For the purpose of addressing the Board's present motion, this court excludes the additional facts interjected by the Board, and the Board's motion to dismiss Plaintiff's claims for punitive damages or damages in excess of

18

$100,000.00 is due to be denied.[4]

## V.    CONCLUSION AND RECOMMENDATION

Accordingly, for the reasons as stated, it is the **RECOMMENDATION** of the Magistrate Judge that Defendant City's motion to dismiss (Doc. 11) is due to be **GRANTED IN PART** and **DENIED IN PART**.  The motion to dismiss is due to be **GRANTED** as to the Plaintiff's claims against unnamed, fictitious parties; Plaintiff's claims for punitive damages and wantonness against the City; Plaintiff's claims against Boutwell in his official capacity; Plaintiff's claims against the City in Counts I-IV and VI; and Plaintiff's claims against the City for negligent supervision, training, and evaluation.  The City's motion to dismiss is due to be **DENIED** as to Plaintiff's state law negligence claims against the City based on the doctrine of *respondeat superior*.

It is the further **RECOMMENDATION** of the Magistrate Judge that Defendant Board's motion to dismiss (Doc. 16) is due to be **GRANTED IN PART** and **DENIED IN PART**. The motion to dismiss is due to be **GRANTED** as to Plaintiff's claims against the Board in Counts I-V.  The Board's motion to dismiss is

---

[4]In denying the Board's motion for partial dismissal as to the issue of damages, this court is not suggesting that the Board is precluded from filing a properly supported motion pursuant to Rule 56, Fed. R. Civ. P., seeking similar relief. Further, no opinion is hereby suggested as to the potential outcome of such motion.

due to be **DENIED** as to Plaintiff's state law claims for punitive damages or damages in excess of $100,000.00.

It is **ORDERED** that the parties shall file any objections to the said Recommendation on or before **March 1, 2016.**  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).

**DONE** and **ORDERED** this 16th day of February, 2016.

/s/ Paul W. Greene
United States Magistrate Judge

20