## IN THE UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **VICKY SANDERS, as Guardian** ) | |
| **of Brian Lomanack, an** ) | |
| **Incapacitated Person,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 1:15-cv-122-MHT-DAB** |
| ) | |
| **CITY OF OZARK, ALABAMA,** ) | |
| **a municipality,** *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

## <u>REPORT AND RECOMMENDATION</u>

Brian Lomanack was in an all-terrain vehicle ("ATV") accident, and he originally filed this lawsuit[1] seeking redress for injuries to Lomanack, which Plaintiff alleges were exacerbated by a delay in emergency medical care caused by Defendants. This matter is before the court on the following motions: (1) a motion to dismiss for failure to state a claim upon which relief can be granted filed by Defendant City of Ozark, Alabama ("the City") (Doc. 67); (2) a motion to dismiss for failure to state a claim upon which relief can be granted filed by Defendant Gregory Boutwell (Doc. 70); (3) a motion to dismiss for failure to state a claim upon which relief can be granted filed by Defendant Jessica Cauthen (Doc. 73); and a

---

[1] Vicky Sanders was substituted as the Plaintiff as guardian of Lomanack as an incapacitated person in the First Amended Complaint. (Doc. 64 at ¶¶ 1-2).

motion to dismiss for failure to state a claim upon which relief can be granted filed by Defendant Ozark-Dale County E-911 Board, Inc. ("the Board") (Doc. 78). The motions are fully briefed and are taken under submission on the record following oral argument.

## I.    JURISDICTION

Subject matter jurisdiction is conferred by 28 U.S.C. § 1331 as to Plaintiff's federal causes of action, and the court may exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. The parties do not contest personal jurisdiction or venue, and there are adequate allegations to support both. *See* 28 U.S.C. § 1391. On January 5, 2017, this matter was referred to the undersigned by U.S. District Judge Myron H. Thompson for disposition or recommendation on all pretrial matters. (Doc. 51). *See also* 28 U.S.C. § 636(b); Rule 72, Fed. R. Civ. P.; *United States v. Raddatz,* 447 U.S. 667 (1980); *Jeffrey S. v. State Board of Education of State of Georgia,* 896 F.2d 507 (11th Cir. 1990).

## II.   BACKGROUND AND STATEMENT OF FACTS[2]

Aside from minor changes to reflect the substitution of Vicky Sanders as the Plaintiff, the facts in the Amended Complaint are identical to the facts pleaded in the original Complaint. (cf. Doc. ¶¶ 9-39 with 64 at ¶¶ 9-39). While operating an ATV

---

[2] These are the facts for purposes of recommending a ruling on the pending motions to dismiss; they may not be the actual facts and are not based upon evidence in the court's record. They are gleaned exclusively from the allegations in the Amended Complaint.

near the intersection of County Road 59 and County Road 61 in Dale County, Alabama, Lomanack had an accident in which he sustained serious injury and was rendered unconscious, unresponsive, bleeding, barely breathing, and in critical condition. (Doc. 64 at ¶¶ 9-10, 18). The accident occurred near Echo, Alabama, within the jurisdiction of Echo Volunteer Fire & Rescue ("Echo EMS"), and not within the jurisdiction of the Ozark City Fire Department. (Doc. 64 at ¶ 10). The Board serves as the central emergency dispatch unit for multiple first-responder agencies in Dale County, including the Ozark City Fire Department and Echo EMS. (Doc. 64 at ¶ 5). The Board uses a central emergency response system that consists of several channels, including a separate channel for each agency that allows a dispatcher to communicate exclusively with each individual agency, and a "general" channel through which a dispatcher may communicate with all agencies simultaneously. (Doc. 64 at ¶ 12).

On April 3, 2013, Cauthen was working as a dispatcher for the Board and received an initial report requesting emergency medical care for Plaintiff, which she relayed to Echo EMS. (Doc. 64 at ¶¶ 15-17). Echo EMS responded to the scene of the injury and reported to Cauthen that Lomanack was "critical" and "barely breathing." (Doc. 64 at ¶ 18). Based on that report, Rocky Windham, the Chief of Echo EMS, ordered Cauthen to dispatch Flat Iron air evacuation services ("Flat

Iron"). (Doc. 64 at ¶¶ 20-22). Cauthen issued the dispatch order to Flat Iron and announce the order over the general channel. (Doc. 64 at ¶ 23).

Defendant Gregory Boutwell, Fire Chief for the City, was intoxicated during the events relevant to this action, and at no point was Boutwell at the scene of the accident. (Doc. 64 at ¶¶ 24-25). Boutwell heard Cauthen's order for dispatch of Flat Iron on the general channel. (Doc. 64 at ¶ 25). Boutwell utilized the Ozark Fire Department's separate channel to instruct Cauthen to cancel the dispatch for Flat Iron and to place everyone on "standby" until he could arrive at the scene of the accident. (Doc. 64 at ¶ 26). Cauthen informed Boutwell that the accident was in Echo, but cancelled the dispatch to Flat Iron. (Doc. 64 at ¶ 26). Echo EMS was not apprised of this communication. (Doc. 64 at ¶ 27).

Windham arrived at the scene and requested information on Flat Iron's status from Cauthen, which Cauthen ignored. (Doc. 64 at ¶ 29). Cauthen reported Lomanack's condition again to Boutwell on the Ozark Fire Department's separate channel, and Boutwell again reaffirmed his order not to dispatch Flat Iron until he arrived at the scene. (Doc. 64 at ¶ 31). After multiple requests from Echo EMS responders for a status update, Cauthen reported that she had cancelled the Flat Iron dispatch and reported over the general channel that Boutwell had advised her to place all units on standby until he reached the scene of the accident. (Doc. 64 at ¶¶ 33-34). Windham reported to Cauthen that he was at the scene, that Lomanack was critical,

and to dispatch Flat Iron. (Doc. 64 at ¶ 35). By the time Flat Iron was prepared to lift off, an ambulance had arrived on the scene of the accident. (Doc. 64 at ¶ 37). First responders at the scene made the decision to transport Lomanack to the Flowers Hospital via ambulance to avoid further delay. (Doc. 64 at ¶ 37). Upon arrival at Flowers Hospital, Lomanack was diagnosed with a subarachnoid hemorrhage and subdural hematoma. Lomanack underwent procedures including an emergency craniotomy. (Doc. 64 at ¶ 38). As a result of the unnecessary delay in transport, Plaintiff alleges that Lomanack "sustained substantial, permanent cognitive, physical, and economic injuries." (Doc. 64 at ¶39).

On February 23, 2015, Lomanack filed a complaint in this court. (Doc. 1). Defendants filed two motions to dismiss. (Docs. 11 & 16). On March 22, 2016, District Judge Thompson (Doc. 43) adopted the Report and Recommendation of Magistrate Judge Paul Greene (Doc. 39), ordering as follows:

(3) Defendant City of Ozark, Alabama's motion to dismiss (doc. no. 11) is granted in part and denied in part, as follows:

(a) The motion to dismiss is granted with prejudice only as to plaintiff's claims against unnamed, fictitious parties, and plaintiff's claims under Alabama law for punitive damages and wantonness against defendant City of Ozark.

(b) The motion to dismiss is granted without prejudice, and with leave to amend, as to plaintiff's Fourteenth Amendment claims against defendant Gregory Boutwell; plaintiff's claims against defendant City of Ozark in Counts I-IV; and plaintiff's claims against the defendant City of Ozark for negligent supervision, training, and evaluation.

(c) The motion to dismiss is denied as to plaintiff's state-law negligence claims against the defendant City of Ozark based on the doctrine of respondeat superior.

(4) Defendant Ozark-Dale County E-911 Board, Inc.'s motion to dismiss (doc. no. 16) is granted in part and denied in part, as follows:

(a) The motion to dismiss is granted without prejudice as to plaintiff's claims against defendant Ozark-Dale County E-911 Board in Counts I-V.

(b) The motion to dismiss is denied as to plaintiff's state-law claims against defendant Ozark-Dale County E-911 Board for punitive damages or damages in excess of $ 100,000.00.

(Doc. 43 at 2-3, as amended by Doc. 96 at 1-2).

On March 6, 2017, Plaintiff filed the First Amended Complaint alleging six counts against the Defendants:

I. Violations of Fourteenth Amendment rights - Based on Boutwell's actions in his individual capacity, and against the City regarding the conduct of Boutwell. (Doc. 64 at ¶¶ 40-46). The Amended Complaint specifically "brings these claims pursuant to 42 U.S.C. § 1983 against Defendant City of Ozark, Alabama for Boutwell's conduct and also against Defendant Boutwell, personally, in his individual capacity." *Id.* at ¶ 41. Plaintiff further avers that "Defendant City of Ozark, Alabama, is liable for the acts described herein conducted by Defendant Gregory Boutwell while acting in his official capacity." *Id.* at ¶ 45.

II. Violations of Fourteenth Amendment rights - Based on Cauthen's actions in her individual and official capacities. (Doc. 64 at ¶¶ 47-52). Count II of the Amended Complaint contains only minor changes from the original Complaint and is in substance materially unchanged. (cf. Doc. 1 at ¶¶ 46-51).

III. Negligence/Wantonness against Boutwell in his individual under Alabama tort law. (Doc. 64 at ¶¶ 53-56). Significantly, Plaintiff makes

clear that Count III are "against Defendant Boutwell in his individual capacity, as all claims regarding his official capacity are directed to Defendant City of Ozark, Alabama in separate counts addressed herein." *Id.* at ¶ 54.

IV. Negligence/Wantonness against Cauthen in her individual and official capacities under Alabama tort law. (Doc. 64 at ¶¶ 57-60). Count IV of the Amended Complaint contains only minor changes from the original Complaint and is in substance materially unchanged. (cf. Doc. 1 at ¶¶ 56-59).

V. Negligence against City under Alabama tort law under the doctrine of *respondeat superior* and negligent supervision, training, and evaluation of Gregory Boutwell. (Doc. 64 at ¶¶ 61-63).

VI. Negligence/Wantonness against Ozark-Dale County E-911 Board, Inc., under Alabama tort law under the doctrine of *respondeat superior* and negligent supervision, training, and evaluation of Jessica Cauthen. (Doc. 1 at ¶¶ 64-68).

## III.   STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the Complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must take "the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "[A] plaintiff's obligation to provide the 'grounds' of his

'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663 (alteration in original) (citation omitted). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard also "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" of the claim. *Twombly*, 550 U.S. at 556. While the complaint need not set out "detailed factual allegations," it must provide sufficient factual amplification "to raise a right to relief above the speculative level." *Id.* at 555.

"So, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Twombly*, 550 U.S. 558 (quoting 5 Wight & Miller § 1216, at 233-34 (quoting in turn *Daves v.*

*Hawaiian Dredging Co.*, 114 F.Supp. 643, 645 (D. Haw. 1953)) (alteration original).

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).

> "In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

*Iqbal*, 556 U.S. at 679.

## IV.   DEFENDANT BOUTWELL'S MOTION TO DISMISS

### A. § 1983 Claim against Boutwell

Boutwell argues that Plaintiff's § 1983 claim against him is due to be dismissed "as it fails to state a cognizable claim upon which relief may be granted." (Doc. 70 at 7).

> In considering the civil rights claim under 42 U.S.C. Section 1983, … there are two elements essential to such a claim: 1) that the conduct complained of was committed by a person acting under color of state law; and 2) that the conduct deprived a person of rights secured by the Constitution or laws of the United States. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1978).

*Morrison v. Washington Cty., Ala.*, 700 F.2d 678, 682 (11th Cir. 1983).

> In determining whether a constitutional deprivation has occurred, courts must examine whether the defendant was under any obligation to the particular plaintiff. The question of the existence of such a duty is an issue of law. The court, not the jury, must determine "whether, upon the facts in evidence, [a duty] exists between the parties that the

community will impose a legal obligation upon one for the benefit of the other." W. Prosser, Handbook of the Law of Torts 206 (1971).

*Dollar v. Haralson Cty., Ga.*, 704 F.2d 1540, 1543 (11th Cir. 1983). Both the

Plaintiff and the City cite the Eleventh Circuit's holding in *Wideman v. Shallowford*

*Community Hospital, Inc.*, 826 F.2d 1030 (11th Cir. 1987), in which:

> Ms. Wideman called the 911 emergency telephone number in DeKalb County and requested an ambulance to take her to Piedmont [Hospital]. Three employees of the DeKalb County Emergency Medical Service (EMS) responded to this call. Ms. Wideman claims that she again informed the EMS employees to take her to Piedmont where her doctor was waiting, but they refused and, instead, took her against her wishes to Shallowford Community Hospital. After a substantial delay, during which the attending physician at Shallowford spoke by phone with Dr. Ramsey, Ms. Wideman was transferred to Piedmont. At that point, however, Dr. Ramsey was unable to stop her labor, and Ms. Wideman gave birth to a premature baby … who survived for only four hours.

> Toni Wideman and her husband subsequently filed this action under 42 U.S.C. §§ 1983, 1985 and 1988 seeking damages for the wrongful death of their child.

*Wideman*, 826 F.2d at 1031. In examining whether "the existence of a 'special

custodial or other relationship' between an individual and the state may trigger a

constitutional duty on the part of the state to provide certain medical or other

services," *Id.* at 1034, the Eleventh Circuit reasoned:

> [A] constitutional duty can arise only when a state or municipality, by exercising a significant degree of custody or control over an individual, places that person in a worse situation than he would have been had the government not acted at all. Such a situation could arise by virtue of the state affirmatively placing an individual in a position of danger, effectively stripping a person of her ability to defend herself, or cutting off potential sources of private aid. *See Walker,* 791 F.2d at 511; *Estate*

*of Gilmore,* 787 F.2d at 722. The key concept is the exercise of coercion, dominion, or restraint by the state. The state must somehow significantly limit an individual's freedom or impair his ability to act on his own before it will be constitutionally required to care and provide for that person.

*Wideman v. Shallowford Cmty. Hosp., Inc.*, 826 F.2d 1030, 1035–36 (11th Cir. 1987). Accepting the factual allegations in the pleadings as true, Boutwell's actions were beyond his authority, outside his jurisdiction, and undertaken while intoxicated. Boutwell's was not a failure to help or take a specific requested action; rather it was repeated interference with an unjustified overruling of others who were providing aid to Lomanack who was not able to care for himself. Boutwell's interference actively increased the danger faced by Lomanack. Accordingly, Plaintiff has sufficiently stated a § 1983 claim (count 1) and a negligence claim (count 3) against Boutwell.

## B. Qualified Immunity

Boutwell argues that he is entitled to qualified immunity against Plaintiff's § 1983 claim. Qualified immunity protects government officials performing discretionary duties from suits in their individual capacities unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *McCullough v. Antolini*, 559 F.3d 1201, 1205 (11th Cir. 2009) (quotation marks omitted). For qualified immunity to apply, the official asserting the defense must first show that, at the time of the complained of conduct,

he was acting within his discretionary authority. *McCullough*, 559 F.3d at 1205. However, accepting the factual allegations in the pleadings as true, Boutwell acted beyond his actual authority and is therefore not entitled to qualified immunity.

### C. State-Agent Immunity

Boutwell also argues that he is entitled to state-agent immunity from Plaintiff's negligence/wantonness claim under Alabama law. (Doc. 70 at 10). Specifically, Boutwell argues, pursuant to *Ex parte Cranman*, 792 So. 2d 392 (Ala. 2000), that "[a] State agent *shall* be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's … (2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as: … (b) allocating resources; … (d) hiring, firing, transferring, assigning, or supervising personnel…" *Id.* at 405 (emphasis in original). However, *Cranman* further provides that "Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent *shall not* be immune from civil liability in his or her personal capacity… (2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law." *Id.* The Amended Complaint specifically alleges that "Boutwell has no jurisdictional authority to manage or attempt to manage the accident scene and/or decisions regarding BRIAN LOMANACK's emergent

medical transport." (Doc. 60 at ¶ 43). "City officials acting *within the general scope of their authority* have a qualified or discretionary immunity and are not subject to tort liability for an administrative act or omission. *Taylor v. Shoemaker,* 605 So.2d 828 (Ala.1992), adopting *Restatement (Second) of Torts* § 895D (1979)." *Ex parte City of Birmingham*, 624 So. 2d 1018, 1021 (Ala. 1993)(emphasis added). Accepting the factual allegations in the pleadings as true, Boutwell acted beyond his authority and is therefore not immune to civil liability under *Cranman*. Moreover, the authority cited by Boutwell in support of this argument consistently demonstrates that state-agent immunity is more appropriately considered at the summary-judgment stage of litigation. *See Shows v. Morgan*, 40 F. Supp. 2d 1345, 1364 (M.D. Ala. 1999)("Therefore, at least for now, because the immunity issue is before this court on a dismissal motion, the court has not definitively held that [defendants] are not entitled to discretionary-function immunity; but rather, the court, upon request, will revisit the issue at the summary-judgment stage."). Accordingly, Boutwell's motion to dismiss is due to be denied.

## V.      DISCUSSION - THE CITY'S MOTION TO DISMISS

### A.      *Res Judicata* and Claims Against the City

The City argues that "[t]he doctrine of *res judicata* bars the § 1983 claim against the City" on the basis of District Judge Thompson's order entered on March 22, 2016, which dismissed "plaintiff's claims for punitive damages and wantonness

against defendant City of Ozark; and plaintiff's claims against defendant Gregory Boutwell in his official capacity." (Doc. 43 at 2). However, following the briefing of the instant motion for summary judgment, District Judge Thompson entered an Order stating that "It was not this court's intent in its earlier judgment to preclude plaintiff from pursuing a § 1983 claim against the City for the acts that were the focus of plaintiff's official-capacity claim against defendant Boutwell." (Doc. 95 at 2). The Amended Judgment specifically ruled that:

> The motion to dismiss is granted without prejudice, and with leave to amend, as to plaintiff's Fourteenth Amendment claims against defendant Gregory Boutwell; plaintiff's claims against defendant City of Ozark in Counts I-IV; and plaintiff's claims against the defendant City of Ozark for negligent supervision, training, and evaluation.

(Doc. 96 at 2).  Accordingly, and because the amended counts are otherwise briefed by the parties in the alternative, analysis of the City's motion continues below.

## B.   § 1983 Claims Against the City

The City argues that "the First Amended Complaint does not state a § 1983 municipal liability claim against the City upon which relief can be granted." (Doc. 68 at 14). Plaintiff argues that "Boutwell took affirmative actions that significantly increased the risk to Lomanack; he cancelled aid that had been requested by first responders on the scene who had determined that Lomanack was in serious medical need…" (Doc. 85 at 11).

In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court held that municipalities may not be held liable under 42 U.S.C. § 1983 on a theory of *respondeat superior.* Municipalities instead can only be held liable for the execution of a governmental policy or custom. As the *Monell* Court explained: "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. To press a claim under § 1983 against a municipality, "a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). This requires a plaintiff's complaint against a municipality to "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Randall v. Scott*, 610 F.3d 701, 707 n. 2 (11th Cir. 2010) (citation and internal punctuation omitted). A policy or custom that would create municipal liability can be either a written custom or policy, such as an ordinance, or an unwritten practice that is so widespread and "so permanent and well settled as to constitute a custom or use with the force of law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). "Thus, in *Collins v. Harker Heights,* for example,

[the Supreme Court] said that the Due Process Clause was intended to prevent government officials '"'"from abusing [their] power, or employing it as an instrument of oppression."'" 503 U.S., at 126, 112 S.Ct., at 1069 (quoting *DeShaney v. Winnebago County Dept. of Social Servs.,* 489 U.S., at 196, 109 S.Ct., at 1003 (in turn quoting *Davidson v. Cannon,* 474 U.S., at 348, 106 S.Ct., at 670–671)." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846, 118 S. Ct. 1708, 1716–17, 140 L. Ed. 2d 1043 (1998). "[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Id.* at 849. In this case, based on the facts as alleged in the Amended Complaint, it is at least arguable that Boutwell's conduct, taken on behalf of the City as its fire chief, shocks the conscience or was deliberately indifferent and wanton. The City's motion to dismiss Plaintiff's § 1983 claim against it is due to be denied as to Count 1.

### C.    *Respondeat Superior* Claims Against the City

The City advances two arguments in support of its motion to dismiss Plaintiff's state law *respondeat superior* claims against it. Both arguments are addressed in turn below.

### 1.    Discretionary Function Immunity

The City argues that it is entitled to immunity against Plaintiff's state law *respondeat superior* negligence claim under discretionary-function immunity. (Doc.

68 at 24). The City cites *Taylor v. Adams*, 221 F.3d 1254, 1260 (11th Cir. 2000), for the proposition that "firemedics are entitled to discretionary-function immunity if, on the summary-judgment facts, their acts at the scene were discretionary and [the plaintiff] has not presented evidence sufficient to create a jury question regarding whether they 'acted in bad faith, [or] with malice or willfulness.' *Sheth,* 145 F.3d at 1239 (citing *Wright v. Wynn,* 682 So.2d 1, 2 (Ala. 1996))." The Eleventh Circuit held that Alabama law does "extend to [firemen] a common-law form of discretionary-function immunity," but noted that "the case law addressing Alabama's discretionary-function-immunity doctrine is muddled." *Id.* In *Taylor*, the Eleventh Circuit's analysis focused on "whether [the firemen's] acts were discretionary where discretionary acts are defined as '"those ... as to which there is no hard and fast rule as to the course of conduct that one must or must not take and those acts requiring exercise in judgment and choice and involving what is just and proper under the circumstances."' *Id.* (quoting *Wright,* 682 So. 2d at 2)." *Taylor*, 221 F.3d at 1261. At this stage of the proceedings, the facts, as they are presented in the Amended Complaint, do not permit the fact-intensive inquiry whether the City had a hard and fast rule as to the course of conduct applicable to the facts of this case such that Boutwell would or would not have had discretion in taking the actions which Plaintiff has alleged, nor have the parties submitted additional documentation

that would allow this matter to be considered, as was *Taylor*, as a motion for summary judgment.

### 2.      Immunity Under § 11-47-190, Ala. Code 1975

The City also moves to dismiss Plaintiff's claim of negligence based on the doctrine of *respondeat superior* pursuant to the provisions of § 11-47-190, Ala. Code 1975, which provides, in pertinent part:

> No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the neglect, carelessness, or unskillfulness of some agent, officer, or employee of the municipality engaged in work therefor and while acting in the line of his or her duty...

§ 11-47-190. The City argues that it "enjoys municipal immunity under Alabama Code section 11-47-190 to the extent that Boutwell's actions might be characterized as in bad faith, malicious or willful." (Doc. 68 at 25). "Alabama law provides a municipality with immunity for injuries caused by its agents unless the injury resulted from the 'neglect, carelessness, or unskillfulness' of the agent. Ala. Code § 11–47–190; *Brown v. City of Huntsville, Ala.,* 608 F.3d 724, 742–43 (11th Cir.2010)." *Fowler v. Meeks*, 569 F. App'x 705, 708 (11th Cir. 2014). In this case, all Boutwell's alleged actions as stated in the Amended Complaint demonstrate intentional conduct. "Thus, because the facts show intentional conduct, the City is entitled to immunity under § 11–47–190." *Fowler v. Meeks*, 569 F. App'x 705, 708 (11th Cir. 2014).

## VI.   DEFENDANT CAUTHEN'S MOTION TO DISMISS

### A. Official Capacity Claims

Cauthen first argues that "[b]ecause Plaintiff brings claims against the E-911 Board, the official capacity claims against Cauthen should be dismissed." (Doc. 73 at 3). The Amended Complaint alleged that "Defendant, Ozark-Dale County E-911 Board, Inc., is a domestic corporation created and existing pursuant to Alabama law." (Doc. 64 at ¶ 5). Cauthen did not attach any materials in support of her implicit argument that the Board is a governmental entity created pursuant to § 11-98-2. *See Barnes v. City of Dothan*, 795 F.Supp. 2d 1276, 1283 (M.D. Ala. 2001)("Because the claims against the individual defendants in their official capacities are redundant and because the City has been joined as a defendant in this action, the Defendants' request is due to be GRANTED on this ground."). Rule 12(d), Fed. R. Civ. P., provides that "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." For the purpose of addressing Cauthen's present motion, there are no facts to support a finding that the Board is a governmental entity, and Cauthen's motion to dismiss Plaintiff's claims against her in her official capacity are due to be denied.[3]

---

[3] In recommending that Cauthen's motion to dismiss as to the issue of official-capacity claims, the undersigned is not suggesting that Cauthen or the Board are precluded from filing a properly supported motion pursuant to Rule 56, Fed. R. Civ. P., seeking similar relief. Further, no opinion is hereby suggested as to the potential outcome of such motion.

### B.      § 1983 Claim against Cauthen

Cauthen argues that Plaintiff's § 1983 claim against her is due to be dismissed. (Doc. 73 at 5). Cauthen's argument is predicated on the same argument and authority as the City and Boutwell, specifically, pursuant to the holding in *Wideman*. (Doc. 73 at 3-4). However, regardless of the holding in *Wideman*, the claims against Cauthen individually would be subject to qualified immunity. "Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Andujar v. Rodriguez,* 486 F.3d 1199, 1202 (11th Cir.2007) (internal quotation marks omitted). "An official asserting the affirmative defense of qualified immunity must initially establish that he was acting within his discretionary authority." *Skop v. City of Atlanta, Georgia,* 485 F.3d 1130, 1136 (11th Cir.2007). "If the official was acting within the scope of his discretionary authority ... the burden shifts to the plaintiff to show that the official is not entitled to qualified immunity." *Id.* at 1136–37. Here, Plaintiff has not challenged the assertion that she was at all times acting within the scope of her discretionary authority as a dispatcher following the directives of a fire chief. Plaintiff's Amended Complaint alleges that Cauthen was working in her capacity of emergency dispatcher during the relevant time frame. (Doc. 64 at ¶¶ 3).

Therefore, "[t]o overcome qualified immunity, [ ] plaintiff must satisfy a two prong test; he must show that: (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Holloman ex rel. Holloman v. Harland,* 370 F.3d 1252, 1264 (11th Cir.2004). "The threshold inquiry" a court must consider in a qualified immunity analysis is whether Plaintiff has alleged a constitutional violation. *Hope v. Pelzer,* 536 U.S. 730, 736 (2002). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz,* 533 U.S. 194, 201 (2001). Even assuming that *Boutwell* violated Lomanack's constitutional rights by deliberately cancelling the dispatch of air evacuation services, the Amended Complaint does not allege that *Cauthen* ratified that decision or even had the authority to ratify or refuse direction from any municipal official. Rather, by following directions, even from someone outside the chain of command, was within Cauthen's discretionary authority and not willful or wanton. Accordingly, Cauthen is entitled to qualified immunity in her individual capacity.

### C.   State-Agent and Discretionary-Function Immunity

Cauthen argues that she is entitled to state-agent and discretionary-function immunity from Plaintiff's negligence/wantonness claim under Alabama law. (Doc. 70 at 10). Specifically, Cauthen argues, pursuant to *Ex parte Cranman*, 792 So. 2d 392 (Ala. 2000), that "A State agent *shall* be immune from civil liability in his or

her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's … (2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as: … (b) allocating resources; … (d) hiring, firing, transferring, assigning, or supervising personnel…" *Id.* at 405 (emphasis in original). *Cranman* further provides that "Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent *shall not* be immune from civil liability in his or her personal capacity… (2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law." *Id.* The Amended Complaint does not allege that Cauthen acted willfully, maliciously, fraudulently, in bad faith, beyond her authority, or under a mistaken interpretation of the law. Cauthen cites *Taylor v. Adams*, 221 F.3d 1254, 1260 (11th Cir. 2000), for the proposition that "firemedics are entitled to discretionary-function immunity if, on the summary-judgment facts, their acts at the scene were discretionary and [the plaintiff] has not presented evidence sufficient to create a jury question regarding whether they 'acted in bad faith, [or] with malice or willfulness.' *Sheth,* 145 F.3d at 1239 (citing *Wright v. Wynn,* 682 So.2d 1, 2 (Ala. 1996))." Because Plaintiff has not presented any facts that would support such a question, Cauthen's motion to dismiss the state law claims against Cauthen are due to be granted.

## VII.   OZARK-DALE COUNTY E-911 BOARD, INC.'S MOTION

### A. § 1983 Claims

The Board first argues that "To the extent the Plaintiff seeks to assert § 1983 claims against the E-911 Board due to the actions of Defendant Cauthen in her official capacity, those claims are due to be dismissed." (Doc. 79 at 5). Because Cauthen is entitled to qualified immunity for Plaintiff's § 1983 claim against her, the Board's motion to dismiss such a claim is due to be granted.

### B. State Law Claims Against the Board

Similarly, because Cauthen is entitled to discretionary function immunity to the state law claim against her, the Board's motion to dismiss the state-law claim against it due to the actions of Cauthen is due to be granted.

## VIII.  CONCLUSION AND RECOMMENDATION

Accordingly, for the reasons as stated, it is the **RECOMMENDATION** of the Magistrate Judge that City's motion to dismiss the state law claim against it in Count V (Doc. 67); Cauthen's motion to dismiss the claims against her (Doc. 73); and the Board's motion to dismiss the claims against it (Doc. 78) are due to be **GRANTED**. In all other respects, the respective motions to dismiss are due to be **DENIED**.

It is **ORDERED** that the parties shall file any objections to this Recommendation on or before **December 11, 2017.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to

which the party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).

**DONE** and **ORDERED** this 27th day of November, 2017.

David A. Baker
United States Magistrate Judge