IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION


VICKY SANDERS, as           )
Guardian of Brian           )
Lomanack, an Incapacitated )
Person,                     )
                            )
       Plaintiff,           )
                            )        CIVIL ACTION NO.
     v.                     )         1:15cv122-MHT
                            )            (WO)
GREGORY BOUTWELL, et al.,   )
                            )
       Defendants.          )


## OPINION

Plaintiff Vicky Sanders brings this lawsuit as the guardian of Brian Lomanack, who is incapacitated. The plaintiff guardian alleges that the defendants needlessly delayed the provision of medical care to Lomanack after he was severely injured in an accident. The defendants are Ozark Fire Chief Gregory Boutwell and his employer the City of Ozark, Alabama, and 911 call operator Jessica Cauthen and her employer the Ozark-Dale County E-911 Board. The plaintiff guardian asserts against the

1

defendants a federal substantive-due-process claim under 42 U.S.C. § 1983 and state claims of negligence and wantonness. This court's jurisdiction is proper under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1367 (supplemental).

Now before the court is the recommendation of the magistrate judge that the defendants' motions to dismiss be granted except as the federal and state claims against Fire Chief Boutwell and the federal claim against the City of Ozark. After and independent and de novo review of the record and for the reasons to be explained below, the court will accept the magistrate judge's recommendation only in part, and will dismiss all claims except the state claims against Boutwell.

## I. LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of the complaint against the legal standard articulated by Rule 8 of the Federal Rules of Civil Procedure. Rule

8 provides that the complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff. *See Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321–22 (11th Cir. 2012).

To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Additionally, notwithstanding the alleged facts, Rule 12(b)(6) "[d]ismissal is ... permitted 'when on the basis of a dispositive issue of law, no construction of the factual

allegations will support the cause of action.'" *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006) (quoting *Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993)); *see also Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989) (explaining that Rule 12(b)(6) allows a court "to dismiss a claim on the basis of a dispositive issue of law").

Finally, the court need not accept as true "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d. 1182, 1188 (11th Cir. 2002). Conclusory allegations are those that express "a factual inference without stating the underlying facts on which the inference is based." *Conclusory*, Black's Law Dictionary (11th ed. 2019).

## I. FACTUAL ALLEGATIONS

The facts, taken in the light most favorable to the plaintiff guardian for Lomanack and with all reasonable inferences drawn in plaintiff's favor, are as follows.

4

Lomanack was involved in an all-terrain vehicle accident in Dale County, Alabama, within the jurisdiction of the Echo Volunteer Fire & Rescue. The accident left Lomanack unconscious, bleeding from his ears, and with a "large bulge and/or deformity in his skull and neck area." Am. Compl. (doc. no. 64) at 5. Someone at the scene of the accident dialed 911 and reported the accident to defendant Cauthen, a dispatcher with the defendant Ozark-Dale County E-911 Board.

The E-911 Board, which receives emergency calls and dispatches emergency services like the Echo Volunteer unit, works with both that unit and the Ozark Fire Department to respond to emergencies in the area. The board's communication system includes individual channels for different emergency services as well as a channel to which all emergency personnel have access.

After receiving the emergency call, Cauthen dispatched the Echo Volunteer unit, and a member of the unit arrived at the scene of the accident. That person reported to Cauthen (via the unit's private channel) that

Lomanack was "critical" and "barely breathing," *id.* at 6, and Cauthen repeated that information on the general channel that all agencies could hear. Based on this report, the Echo Volunteer chief--who was not yet at the scene--directed Cauthen to dispatch a medical helicopter to transport Lomanack, and Cauthen proceeded to dispatch the helicopter.

Enter defendant Boutwell who, according to the allegations in this case, was under the influence of alcohol or other intoxicating substances or medicine. As Ozark Fire Chief, he heard Cauthen's helicopter request over the E-911 general channel. Though he was not (and never arrived) at the scene of the accident--an accident that was outside of Ozark's jurisdiction--Boutwell ordered Cauthen (via the Ozark Fire Department channel) to cancel the helicopter and place everyone on "standby" until he could arrive at the scene. *Id.* at 8. Boutwell asked for reports from any unit that arrived at the scene, but Cauthen did not initially share the Echo Volunteer first responder's report that Lomanack was "critical" and

"barely breathing." *Id.* at 9.  Instead, Cauthen reached out to a deputy sheriff she believed was on his way to the scene.  She eventually repeated to Boutwell that Lomanack was critical and described his injuries, but Boutwell continued to instruct Cauthen to delay dispatching the helicopter until he arrived at the scene.

At this time, the Echo Volunteer unit was unaware that the helicopter dispatch was canceled, and its members waited in vain for the helicopter to arrive. After several requests from the Echo Volunteer unit about the status of the helicopter, Cauthen eventually informed the unit that she had canceled the helicopter at Boutwell's request.  After the unit again described Lomanack's condition, Cauthen called Boutwell's cellphone and had an "off-the-record phone conversation," *id.* at 10, after which Boutwell directed Cauthen, via the Ozark Fire Department radio channel, to dispatch the helicopter.

By the time the helicopter was finally on its way to the scene of the accident, an ambulance had arrived, and

the first responders decided it was in Lomanack's best interest to travel via ambulance instead of continuing to wait for the helicopter. As a result of the delay caused by the initial cancelation of the medical helicopter, Lomanack sustained "substantial [and] permanent cognitive, physical, and economic injuries." *Id.* at 11.

## III. FEDERAL CLAIM

As stated, the plaintiff, as Lomanack's guardian, claims that the defendants violated Lomanack's Fourteenth Amendment right to substantive due process as enforced through § 1983.[1]

---

1. For a person to be entitled to relief under §1983, the evidence must show: (1) that the person suffered a deprivation of "rights, privileges or immunities secured by the Constitution and laws" of the United States, and (2) that the act or omission causing the deprivation was committed by a person acting under color of law. *Dollar v. Haralson County*, 704 F.2d 1540, 1542-43 (11th Cir. 1983). While Lomanack's plaintiff guardian alleges that the E-911 Board is a domestic corporation, *see* Am. Comp. (doc. no. 64) at 3, the court assumes, as plaintiff contends, that it and its employee Cauthen acted under color of law. Also, although the plaintiff guardian further alleges that Boutwell acted

**A.**

While acknowledging that "there exists no ... general right to the provision of medical care and services by the state," *Wideman v. Shallowford Cmty. Hosp., Inc.*, 826 F.2d 1030, 1034 (11th Cir. 1987), the parties in their briefs have discussed three theories of liability for a violation of substantive due process: the "special relationship" theory; the "special danger" theory; and the "shocks the conscience" standard.

In certain circumstances, the existence of a "special relationship" may impose special constitutional duties on the State. *See, e.g.*, *Youngberg v. Romeo*, 457 U.S. 307 (1982) (relationship between State and involuntarily committed patients); *Hamm v. DeKalb County*, 774 F.2d 1567 (11th Cir. 1985) (relationship between State and pretrial

---

outside his jurisdictional authority, *see* Am. Comp. (doc. no. 64) at 12 ("Defendant Boutwell had no jurisdictional authority to manage or attempt to manage the accident scene and/or decisions regarding BRIAN LOMANACK's emergent medical transport."), the court assumes that he acted under color of law.  The court need not address the possibilities of inconsistencies here.

detainees).  In *Wideman*, the Eleventh Circuit Court of Appeals discussed whether this duty extended to a pregnant woman who was transported to the wrong hospital by state actors.  The court answered "no."  The appellate court reasoned that, in this context, "a constitutional duty can arise only when a state or municipality, *by exercising a significant degree of custody or control over an individual*, places that person in a worse situation* than he would have been had the government not acted at all."  *Id.* at 1035 (emphasis added).  "The key concept" the court continued, "is the exercise of coercion, dominion, or restraint by the state."  *Id.* at 1035-36.  "The state must somehow significantly limit an individual's freedom or impair his ability to act on his own before it will be constitutionally required to care and provide for that person."  *Id.* at 1036.  The appellate court did not find liability because the record failed to reflect the requisite amount of "coercion, dominion, or restraint" by the government over Wideman to establish a "special relationship."  *Id.* at 1035.  Likewise here,

Lomanack's plaintiff guardian does not allege that the defendants "significantly limit[ed] [Lomanack's] freedom or impair[ed] his ability to act on his own." *Id.* at 1036.

The plaintiff guardian attempts to distinguish *Wideman* on the ground that the defendants assumed Lomanack's "welfare." Pl. Obj. to Rec. (doc. no. 102) at 5. The *Wideman* court refused "to read into the Constitution the tort law principle that a rescue, once begun, must be carried out with due care." 826 F.2d at 1037 (quoting *Bradberry v. Pinellas Ct*y., 789 F.2d 1513, 1518 (11th Cir. 1986)).

Lomanack's plaintiff guardian also argues that the defendants "took affirmative actions that significantly increased the risk to Lomanack." Pl.'s Resp. to Def. Boutwell's Mot. to Dismiss (doc. no. 86) at 10. The court in *Wideman* rejected such an argument. It reasoned: "Even if it could be argued that the County's conduct somehow heightened the peril Ms. Wideman faced, the plaintiffs still would not state a constitutional claim."

826 F.2d at 1037.  While the conduct at issue may have amounted to a claim cognizable under state law, it did not constitute a constitutional violation.  *Id.*

As to the "special danger" theory, it was formerly recognized in the Eleventh Circuit "where the state, through its affirmative acts, put the victim in 'special danger' of harm."  *White v. Lemacks*, 183 F.3d 1253, 1255 (11th Cir. 1999).  The Eleventh Circuit has now made clear that the theory is "no longer good law"; it is "dead and buried."  *Id.* at 1259.  The theory has, instead, been supplanted by the "shocks the conscience" standard, to which the court now turns.  *Id.* at 1258.

Absent a custodial relationship, a person who is harmed by the acts of a local government employee may establish a violation of his right to substantive due process if the act "can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense."  *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998) (quoting *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115 (1992)). -The question for this court, then,

is whether the plaintiff guardian for Lomanack asserts a claim that satisfies what the Supreme Court calls the "shocks-the-conscience test." *Lewis*, 523 U.S. at 834.

Other than stating that "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process," *id.* at 849, and that government conduct intended to injure the plaintiff "in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level," *id.,* the Supreme Court has declined to articulate a comprehensive and categorical definition of a middle range of culpability (recklessness, gross negligence, or deliberate indifference) that would satisfy the test. Instead, the Court has instructed that an "'[a]sserted denial is to be tested by an appraisal of the totality of facts in a given case. That which may, in one setting, constitute a denial of fundamental fairness, shocking to the universal sense of justice, may, in other circumstances, and in the light of other considerations, fall short of

such denial.'" *Id*. at 850 (quoting *Betts v. Brady,* 316 U.S. 455, 462 (1942)). For example, "[d]eliberate indifference that shocks in one environment may not be so patently egregious in another." *Lewis*, 523 U.S. at 850; *see also id.* at 852 (noting as instructive the principle that "deliberate indifference does not suffice for constitutional liability (albeit under the Eighth Amendment) even in prison circumstances when a prisoner's claim arises not from normal custody but from response to a violent disturbance."). What must inform a court in its analysis are, among other things, the "legal traditions" and the State's asserted "present needs." *Lewis*, 523 U.S. at 858 (Kennedy, J., concurring).

As to legal traditions, "the [Supreme] Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended. The doctrine of judicial self-restraint requires [courts] to exercise the utmost care whenever ... asked to break new ground in this

field." *Collins v. City of Harker Heights, Tex.,* 503 U.S. 115, 125 (1992) (internal citation omitted). "Our Constitution deals with the large concerns of the governors and the governed," and "does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society." *Daniels v. Williams*, 474 U.S. 327, 332 (1986).

Accordingly, the Eleventh Circuit has often found no substantive-due-process liability even in cases involving intentional or otherwise abhorrent conduct by government actors. *See, e.g.*, *Nix v. Franklin County School District*, 311 F.3d 1373, 1376 (11th Cir. 2002) (no substantive-due-process violation where teacher used a live wire in class demonstration causing death of student, where teacher knew that electricity running through wire was enough to cause death and that students might touch wire); *Skinner v. City of Miami, Fla.*, 62 F.3d 344, 346 (11th Cir. 1995) (no substantive-due-process violation where, as part of

hazing ritual, police officer was handcuffed on floor while another officer, "who was naked, straddled [the plaintiff's] chest, grabbed [the plaintiff's] head, and rubbed his scrotum over the top of [the plaintiff's] head").

More to the point here, the Eleventh Circuit has refused "to read into the Constitution the tort law principle that a rescue, once begun, must be carried out with due care." *Wideman,* 826 F.2d at 1037 (quoting *Bradberry v. Pinellas Cty*., 789 F.2d 1513, 1518 (11th Cir. 1986)). To be sure, the plaintiff guardian for Lomanack alleges that Fire Chief Boutwell was under the influence of alcohol or other intoxicating substances or medicine. However, while Boutwell interjected himself while he was in an allegedly compromised mental state, the circumstances still did present an unforeseen medical emergency that warranted instant judgment by him as to whether he was obligated to intervene and, if so, what he should do. *Cf. Lewis*, 523 U.S. at 853 ("But when unforeseen circumstances demand an officer's instant

judgment, even precipitate recklessness fails to inch close enough to harmful purpose to spark the shock that implicates 'the large concerns of the governors and the governed.'") (quoting *Daniels,* 474 U.S. at 332)). Moreover, it is undisputed that Boutwell did nothing to cause Lomanack's accident. *Cf. Lewis*, U.S. at 855 (noting, among other things, in rejecting a substantive-due-process claim, that defendant police officer had done nothing to cause the high-speed driving that lead to plaintiff's injury).

This court holds that the allegations presented here of a needlessly delayed provision of medical care to Lomanack are insufficient to overcome the Supreme Court's "reluctan[ce] to expand the concept of substantive due process," *Collins,* 503 U.S. at 125; the allegations do not present that extremely rare instance where it is necessary "to break new ground in this field." *Id.* If the plaintiff guardian for Lomanack has a basis for recovery against the defendants, it must be under state law.

**B.**

Moreover, even if the court were to conclude that the plaintiff guardian for Lomanack asserts a cognizable substantive-due-process claim, 911 call operator Cauthen is entitled to qualified immunity. "Under the qualified immunity doctrine, government officials performing discretionary functions are immune not just from liability, but from suit, unless the conduct which is the basis for suit violates clearly established federal statutory or constitutional rights of which a reasonable person would have known." *Sanders v. Howze*, 177 F.3d 1245, 1249 (11th Cir. 1999) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Actions are within a government official's discretionary authority so long as his actions (1) "were undertaken pursuant to the performance of his duties" and (2) were "within the scope of his authority." *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988); *see also Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994).

First, this two-part test for discretionary authority is met for Cauthen. Second, for the reasons given above, Cauthen's conduct did not violate clearly established federal statutory or constitutional rights.[2]

## C.

Finally, even if the court were to conclude that Lomanack's plaintiff guardian asserts a cognizable substantive-due-process claim, her allegations do not establish a basis for recovery from the City of Ozark and the E-911 Board under § 1983.

A municipality, such as Ozark, may be held liable under § 1983 "when execution of a government's policy or custom ... inflicts the injury." *Monell v. Dep't of Soc.*

_____

2. Lomanack's plaintiff guardian contends that Boutwell is not entitled to qualified immunity because he acted outside his jurisdictional authority and thus cannot satisfy this two-part test for discretionary authority--in particular, the "within the scope of his authority" part. *See* Am. Comp. (doc. no. 64) at 12 ("Defendant Boutwell had no jurisdictional authority to manage or attempt to manage the accident scene and/or decisions regarding BRIAN LOMANACK's emergent medical transport."). The court need not reach this issue.

*Servs.*, 436 U.S. 658, 694 (1978). A municipality may not be sued simply because an employee was acting in her official capacity when committing a tort--that is, "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691. Instead, "the plaintiff has the burden to show that a deprivation of constitutional rights occurred as a result of an official government policy or custom." *Cooper v. Dillon*, 403 F.3d 1208, 1221 (11th Cir. 2005). There are three ways to show a governmental policy or custom: (1) an express policy; (2) a widespread practice so permanent and well-settled as to constitute a custom; or (3) the act or decision of a municipal official with final policy-making authority. *See Cuesta v. School Bd. of Miami—Dade Cnty.*, 285 F.3d 962, 966–68 (11th Cir. 2002)). With respect to actions based on the acts or decisions of municipal officials with final policy-making authority, "not every decision by municipal officers automatically subjects the municipality to § 1983 liability. Municipal liability attaches only where the

decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986).

Here Lomanack's plaintiff guardian fails to set forth allegations that Ozark had an express policy or a custom with regard to Boutwell's alleged actions, or that Boutwell possessed final authority to establish municipal policy with respect to his alleged actions. Indeed, the plaintiff alleges virtually the contrary: that Boutwell acted outside his jurisdiction and city authority. *See* Am. Comp. (doc. no. 64) at 12 ("Defendant Boutwell had no jurisdictional authority to manage or attempt to manage the accident scene and/or decisions regarding BRIAN LOMANACK's emergent medical transport.").

As to the E-911 Board, the plaintiff guardian for Lomanack asserts no theory of recovery for Cauthen's alleged actions under § 1983. Indeed, it is not clear from the allegations that the plaintiff is even seeking relief under § 1983 from the E-911 Board.

## IV. STATE CLAIMS

The plaintiff guardian for Lomanack also asserts state claims for negligence and wantonness against Boutwell, Cauthen, Ozark, and the E-911 Board.

### A.

Boutwell and Cauthen assert the defense of state-agent immunity. "State-agent immunity protects state employees, as agents of the State, in the exercise of their judgment in executing their work responsibilities." *Ex parte Hayles*, 852 So. 2d 117, 122 (Ala. 2002). The Supreme Court of Alabama recently explained how to approach whether a state actor is shielded by state-agent immunity:

> "This Court has established a burden-shifting process when a party raises the defense of State-agent immunity. In order to claim State-agent immunity, a State agent bears the burden of demonstrating that the plaintiff's claims arise from a function that would entitle the State agent to immunity. If the State agent makes such a showing, the burden then shifts to the plaintiff to show that the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority. A State agent acts beyond authority and is therefore not immune when he or she fails to discharge duties

> pursuant to detailed rules or regulations, such
> as those stated on a checklist."

*Ex parte Ingram*, 229 So. 3d 220, 229 (Ala. 2017) (internal citation omitted). When considering whether a state actor acted "beyond his or her authority" by failing to discharge duties pursuant to rules, "there must be a fact-intensive inquiry into whether a relevant guideline leaves room for the exercise of any discretion or professional judgment by the employee in relation to the particular circumstances with which the employee may be presented." *Id.*

Here, Lomanack's plaintiff guardian alleges that Boutwell acted outside of his authority by acting outside of his territorial jurisdiction. These allegations are sufficient to warrant denial of Boutwell's defense at the motion-to-dismiss stage. Indeed, Boutwell, in his objections to the recommendation of the magistrate judge, did not object to magistrate judge's conclusion that his dismissal motion should be denied as to the state claims against him.

As to Cauthen, the plaintiff guardian for Lomanack argues that she acted beyond her authority by failing to abide by policies plaintiff suspects exist. All that is stated in support of the existence of such policies is that: "Indeed, it is almost inconceivable that there would not be some rule or policy that requires dispatchers to correctly relay messages to first responders, or that, alternatively, forbids dispatchers from failing or refusing to relay appropriate messages or updates to first responders." Pl.'s Resp. to Cauthen's Mot. to Dismiss (doc. no. 87) at 19 n.6. The plaintiff guardian fails to allege in her amended complaint or in any brief the basis for this factual supposition. For example, there are no allegations or assertions that entities elsewhere, but similarly situated to the E-911 Board, have a policy that goes into such detail, rather than leaves the issue to the professional judgment of the dispatcher.

Moreover, here Cauthen first dispatched emergency services; then called for a helicopter as requested by

emergency responders on the scene; then cancelled it when told to do so by Boutwell, a local fire chief responding to her earlier emergency dispatch; and then redispatched the helicopter when told to do so by Boutwell. While in hindsight Cauthen's decision to follow Boutwell's initial command was clearly wrong, there is no basis to conclude, because of the kaleidoscope of possible circumstances, that, for emergency responders, there is, or should be or even could be, a specific policy as to when they should and should not ignore a nearby city fire chief's command.

## B.

The plaintiff guardian for Lomanack asserts that Ozark is liable for Boutwell's "negligence, carelessness, or unskillfulness" and the E-911 Board is liable for Cauthen's "negligent and/or wanton conduct" under the doctrine of *respondeat superior*. Am. Compl. (doc. no. 64) at 21, 23.

Ozark argues that it is immune from suit under 1975 Ala. Code § 11-47-190, which provides, in relevant part, as follows:

> "No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the neglect, carelessness, or unskillfulness of some agent, officer, or employee of the municipality engaged in work therefor and while acting in the line of his or her duty ...."

1975 Ala. Code § 11-47-190 (emphasis added). Here, as previously stated, Lomanack's plaintiff guardian alleges that Boutwell was acting outside his jurisdiction and city authority. *See* Am. Comp. (doc. no. 64) at 12 ("Defendant Boutwell had no jurisdictional authority to manage or attempt to manage the accident scene and/or decisions regarding BRIAN LOMANACK's emergent medical transport."). The City of Ozark cannot, therefore, be held liable for Boutwell's actions.

As to the E-911 Board, because Cauthen is not liable, there is no basis to hold it liable.

***

An appropriate judgment will be entered granting the defendants' motions to dismiss except as to the state claims against Fire Chief Boutwell.

DONE, this the 25th day of November, 2019.

 /s/ Myron H. Thompson 
**UNITED STATES DISTRICT JUDGE**
